1   LUIS LI (State Bar No. 156081)
Luis.Li@mto.com
2   PAUL J. WATFORD (State Bar No. 183283)
Paul.Watford@mto.com
3   JENNY M. JIANG (State Bar No. 247986)
Jenny.Jiang@mto.com
4   MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
5   Los Angeles, CA  90071-1560
Telephone:  (213) 683-9100
6   Facsimile:  (213) 687-3702

7   AIMEE FEINBERG (State Bar No. 223309)
Aimee.Feinberg@mto.com
8   MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
9   San Francisco, CA  94105-2907
Telephone:  (415) 512-4000
10  Facsimile:  (415) 512-4077

11  Attorneys for Plaintiff
VAN WAGNER COMMUNICATIONS, LLC

12

13

14              UNITED STATES DISTRICT COURT

15              CENTRAL DISTRICT OF CALIFORNIA

16                                          CV08-05782  DSF  JTLx

17  VAN WAGNER                     CASE NO. _____
    COMMUNICATIONS, LLC,
18
              Plaintiff,          **COMPLAINT FOR DECLARATORY**
19                                **AND INJUNCTIVE RELIEF**
         vs.
20
    CITY OF LOS ANGELES,
21
              Defendant.
22

23

24

25

26

27

28

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1.     Plaintiff Van Wagner Communications, LLC ("Van Wagner") brings this action to challenge Defendant City of Los Angeles' ("the City") unlawful ordinance restricting off-site signs within city limits. The City's sign ordinance, on its face and as applied, violates the First Amendment to the United States Constitution, the Equal Protection Clause to the U.S. Constitution, and the California Constitution. This Court has jurisdiction over the parties and subject matter in this Complaint. Van Wagner's federal claims arise under the Constitution and laws of the United States, including the First Amendment, the Fourteenth Amendment, and 42 U.S.C. § 1983. Jurisdiction is proper under 28 U.S.C. § 1331 and 28 U.S.C. § 1343. This Court may enter declaratory relief under 28 U.S.C. §§ 2201-02. This Court has supplemental jurisdiction over Van Wagner's state law claim pursuant to 28 U.S.C. § 1367(a).

2.     A court in this district has already concluded that several provisions of the City's sign ordinance violate the First Amendment and has permanently enjoined the City from enforcing those provisions against a local sign company. The ordinance inflicts the same First Amendment injury in this case, and Van Wagner is therefore entitled to the same relief.

**VENUE**

3.     Venue in this district is proper under 28 U.S.C. § 1391(b) because Defendant resides here and because a substantial part of the events giving rise to Van Wagner's claims occurred in this judicial district.

**PARTIES**

4.     Van Wagner Communications, LLC is an outdoor advertising company with its chief executive office in New York City, New York. Van Wagner also maintains an office in the City of Los Angeles. Van Wagner is one of the largest "out of home" advertising companies in the nation, and has a substantial inventory of signs in Los Angeles. Typically, Van Wagner leases private property

1

COMPLAINT FOR DECLARATORY<br>AND INJUNCTIVE RELIEF

1    on which it displays its signs.  Van Wagner then sells advertising space on its signs

2    to both commercial and non-commercial entities.  Van Wagner's signs carry both

3    commercial and non-commercial messages.

4        5.    The City of Los Angeles is a municipal corporation, organized under

5    its Charter and the laws of the State of California.

6                    **THE CITY'S SIGN ORDINANCE**

7        6.    The City comprehensively regulates outdoor advertising within city

8    limits, primarily through two parts of the Los Angeles Municipal Code ("LAMC"):

9    (a) Chapter 1, Article 4.4, §§ 14.4.1 *et seq.*; and (b) Chapter 9, Article I,

10   Division 62, §§ 91.6201 *et seq.* (collectively, "the Ordinance").

11       7.    Outdoor advertising signs like those regulated by the Ordinance are

12   speech protected by the First Amendment to the Constitution.

13       8.    The Ordinance has multiple purposes: (a) that "the design,

14   construction, installation, repair and maintenance of signs will not interfere with

15   traffic safety or otherwise endanger public safety"; (b) applicable sign regulations

16   "will provide reasonable protection to the visual environment by controlling the

17   size, height, spacing and location of signs"; (c) "both the public and sign users will

18   benefit from signs having improved legibility, readability, and visibility";

19   (d) "consideration will be given to equalizing the opportunity for messages to be

20   displayed"; and (e) "adequacy of message opportunity will be available to sign

21   users without dominating the visual appearance of the area."  LAMC § 14.4.1.

22       9.    The Ordinance distinguishes between "off-site" signs and "on-site"

23   signs.  *Id.* § 14.4.2.  Generally speaking, off-site signs advertise businesses,

24   products, services, or events that are not sold where the sign is displayed.  On-site

25   signs, by contrast, advertise products or services offered at the sign's location.

26       10.    The Ordinance generally bans new off-site signs on private property.

27   *Id.* § 14.4.4(B)(11).  But the Ordinance exempts from this prohibition "off-site

28   signs [that] are specifically permitted pursuant to a legally adopted specific plan,

2

1 supplemental use district, an approved development agreement, or a relocation

2 agreement entered into pursuant to California Business and Professions Code

3 Section 5412." *Id.*

4       11.    The Ordinance also generally prohibits alterations to existing off-site

5 signs, subject to the same exceptions where "specifically permitted pursuant to a

6 legally adopted specific plan, supplemental use district, an approved development

7 agreement, or a relocation agreement entered into pursuant to California Business

8 and Professions Code Section 5412." *Id.* This prohibition on altering existing off-

9 site signs prevents sign companies like Van Wagner from converting existing

10 billboards that display static advertising copy into billboards with digital displays.

11       12.    The Ordinance also generally prohibits supergraphic signs, which are

12 images printed on vinyl or other material that is then affixed to a wall. *Id.*

13 §§ 14.4.2, 14.4.4(B)(9). Much like the general ban on off-site signs, the prohibition

14 on supergraphic signs exempts "supergraphic signs [that] are specifically permitted

15 pursuant to a legally adopted specific plan, supplemental use district or an approved

16 development agreement." *Id.* § 14.4.4(B)(9).

17       13.    The Ordinance separately bans most off-site signs that are within 2,000

18 feet of a freeway and that are viewed primarily from the road. *Id.* § 14.4.6. The

19 prohibition on freeway signs also exempts signs that are "specifically permitted

20 pursuant to a legally adopted specific plan, supplemental use district, an approved

21 development agreement, or a relocation agreement entered into pursuant to

22 California Business and Professions Code Section 5412." *Id.* § 14.4.4(B)(9), (11).

23       14.    The City interprets each of these prohibitions on off-site, supergraphic,

24 and freeway signs as applying only to signs on private property, not to signs in the

25 public right-of-way. *See id.* §§ 91.101.4, 91.101.5.

26       15.    The exceptions to the Ordinance's prohibitions for signs authorized by

27 specific plans, supplemental use districts, and development agreements give City

28

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

1   officials sweeping authority over whether to allow off-site, supergraphic, and

2   freeway signs.

3       16.   City officials can adopt specific plans or supplemental use districts in

4   their discretion. *Id.* § 12.32. The only guidepost mentioned in the Ordinance is

5   whether an approved plan or district would be "in conformity with public necessity,

6   convenience, general welfare and good zoning practice." *Id.* § 12.32(C)(7).

7       17.   In addition, City officials enjoy broad authority to adopt regulations

8   governing signs in sign districts, one type of supplemental use district contemplated

9   by the City's municipal code: "The sign regulations [in a sign district] shall

10  enhance the character of the district by addressing the location, number, square

11  footage, height, light illumination, hours of illumination, sign reduction program,

12  duration of signs, design and types of signs permitted, as well as other

13  characteristics, and can include murals, supergraphics, and other on-site and off-site

14  signs. However, the regulations for a 'SN' Sign District cannot supersede the

15  regulations of an Historic Preservation Overlay District, a legally-adopted specific

16  plan, supplemental use district or zoning regulation needed to implement the

17  provisions of an approved development agreement." *Id.* § 13.11(C).

18      18.   City officials also enjoy standardless authority to adopt development

19  agreements that allow the installation of new signs. Development agreements need

20  only be consistent with specific plans, which themselves vest City officials with

21  broad discretion.

22      19.   These provisions of the Ordinance give City officials sweeping

23  discretion over whether and how to adopt, amend, or repeal specific plans, sign

24  districts, and development agreements—and hence, whether to allow or prohibit

25  speech. By failing to constrain their discretion, the Ordinance gives City officials

26  the power to allow the speech and speakers that they favor and prohibit the speech

27  and speakers that they disfavor. This discretion poses the risk that prospective

28

4

1   speakers will censor their speech to avoid subjecting themselves to the unrestrained

2   authority of local officials.

3       20.    The City's Ordinance separately prohibits signs that officials deem to

4   be a "hazard" to traffic safety.  The Ordinance provides that "[n]o sign or sign

5   support structure shall be erected, constructed, painted or maintained, and no permit

6   shall be issued, if the sign or sign support structure, because of its location, size,

7   nature or type, constitutes a hazard to the safe and efficient operation of vehicles

8   upon a street or a freeway, or which creates a condition that endangers the safety of

9   persons or property."  *Id.* § 14.4.5(A).  This provision does not require City

10  officials to articulate their reasons for deeming a prospective sign a "hazard."

11      21.    This provision of the Ordinance fails to include definite and objective

12  standards to constrain local officials' discretion in deciding what signs pose a

13  "hazard" due to their "nature or type" and hence are prohibited under the

14  Ordinance.  The provision therefore empowers local officials to allow or prohibit

15  signs based on their content.

16      22.    The Ordinance also authorizes the Board of Building and Safety

17  Commissioners (the "Board") to "grant significant modifications from these sign

18  regulations."  *Id.* § 91.6201.6.1.  To grant such a modification, the Board "must

19  find (1) that a special, individual reason makes the strict letter of the ordinance

20  impractical and (2) that the requested modification is in conformity with the spirit

21  and purposes of the objectives set forth in Section 91.6201.6.6 of this Code."  *Id.*

22  § 91.6201.6.2.  This provision does not require City officials to articulate their

23  reasons for granting or denying a requested significant modification.

24      23.    This provision of the Ordinance fails to include definite and objective

25  standards to constrain local officials' discretion in deciding whether there is a

26  "special, individual reason" to allow a proposed sign or sign alteration and whether

27  a requested modification conforms with the "spirit and purposes" of the

28

5

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

1    Ordinance's objectives.  This provision therefore empowers local officials to allow
2    or prohibit signs or sign alterations based on the signs' content.

3        24.    The Ordinance also requires sign companies like Van Wagner to
4    obtain a permit before erecting a new sign or modernizing an existing one.  *Id.*
5    § 91.6201.2.

6        25.    The Ordinance specifically exempts from this permit requirement,
7    however, certain persons as well as signs with particular content.  The Ordinance
8    says: "The following signs are exempt from the requirements to obtain a permit
9    before erection:  . . .  Boards and signs used exclusively to display official notices
10   issued by any court or public officer in the performance of a public duty or by a
11   private person in giving legal notice."  *Id.* § 91.6201.2(1)(b).

12   ## THE CITY'S STREET FURNITURE AND OTHER SIGN PROGRAMS

13       26.    Notwithstanding the City's general ban on new off-site, supergraphic,
14   and freeway signs, the City has authorized the installation and operation of
15   thousands of new such signs throughout the City.  And notwithstanding the general
16   ban on altering existing off-site signs, the City has authorized some sign companies
17   to make such alterations by converting their billboards into digital displays.

18       27.    First, six months prior to enacting the ban on off-site signs, the City
19   entered into a contract giving its selected vendor, Viacom Decaux (a joint venture
20   between CBS Outdoor's predecessor, Viacom Outdoor Inc., and J.C. Decaux), the
21   exclusive right to install thousands of new off-site advertising signs on transit
22   shelters, kiosks, and other public amenities throughout the City.  This Street
23   Furniture Agreement will yield for the City at least $150 million over the 20-year
24   life of the contract.  Under the agreement, the City is also entitled to payments
25   above and beyond the $150 million floor if revenues from street furniture
26   advertising exceed certain levels.

27       28.    The Street Furniture Agreement also gives the City control over the
28   content of street furniture signs.  The agreement bans advertisements for tobacco

6

1   products, and in certain locations, alcohol products, unless the City grants

2   permission otherwise.

3        29.    Second, from the end of 2004 through 2007, the City entered into

4   settlement agreements with certain outdoor advertising companies (the "Settlement

5   Agreements") that, among other things, allowed those companies to maintain

6   unpermitted off-site signs. In addition, the Settlement Agreements authorize the

7   companies to convert existing billboards of their choice into billboards with digital

8   displays.

9        30.    As a result of these Settlement Agreements, numerous electronic

10  billboards now appear throughout the City.

11       31.    Upon information and belief, the City granted the settling sign

12  companies these benefits based on these companies' decision to challenge the

13  City's sign ordinance in court.

14       32.    Van Wagner requested that the City give it treatment comparable to

15  that in the Settlement Agreements. The City refused.

16       33.    Third, the City has developed a street banner program that facilitates

17  the placement of signs on publicly owned street light poles. LAMC §§ 62.132 *et*

18  *seq.* Banner signs advertise local civic and charitable events as well as the events'

19  for-profit sponsors. Upon information and belief, there can be thousands of banner

20  signs displayed in the City at any given time. The City charges fees for installing

21  these signs.

22       34.    Fourth, upon information and belief, the City has permitted signs

23  within 2,000 feet of freeways, including, but not necessarily limited to:

24       a)     An electronic pole sign at the Staples Center, adjacent to the 110

25  Harbor Freeway, that frequently changes its display; and

26       b)     Four billboards in the 15th Street Signage Supplemental Use

27  District.

28

7

35. Fifth, upon information and belief, the City has allowed off-site signs, including those with digital displays, near the City's convention center and sports arena.

36. Sixth, the City permits large off-site advertising signs to be displayed on City transit buses.

37. Upon information and belief, these authorized off-site signs impact the City's interests in traffic safety and aesthetics more than, or at least in the same manner as, Van Wagner's desired signs. The City therefore undermines its purported interests in traffic safety and aesthetics by allowing these off-site signs.

## VAN WAGNER'S SIGNS

38. Van Wagner maintains significantly in excess of 200 permitted signs in the City.

39. Van Wagner's signs display lawful, non-misleading messages.

40. Since the ban took effect, Van Wagner has, through lease agreements, obtained the right to install and operate numerous other off-site, supergraphic, and freeway signs on private property located throughout the City.

41. Van Wagner would seek a permit from the City authorizing the installation and maintenance of a sign at each of these locations if the Ordinance did not prohibit the issuance of a permit for such signs.

42. Applying for sign permits would be futile in light of the Ordinance's prohibitions.

43. Van Wagner is ready and able to erect other, new off-site, supergraphic, and freeway signs at locations in the City and would do so but for the Ordinance's prohibitions.

44. Van Wagner is also ready and able to convert some of its existing static display billboards into billboards with digital displays and would do so but for the Ordinance's prohibitions.

8

45.     Van Wagner has sought to enter into leases with private landowners to erect new off-site signs on their property, but the landowners have refused because of the Ordinance's prohibition.

46.     Van Wagner faces a credible and imminent threat of City enforcement action, civil penalties, and/or criminal prosecution with respect to any unpermitted sign locations.

47.     Van Wagner also faces a credible and imminent threat of City enforcement action, civil penalties, and/or criminal prosecution if it were to proceed with its plans to convert existing billboards into billboards with digital displays.

48.     The City actively enforces the Ordinance's prohibitions. Upon information and belief, local sign companies and property owners are regularly subjected to City enforcement actions over signs that City inspectors deem to be in violation of the Ordinance, including the Ordinance's prohibitions on off-site, supergraphic, and freeway signs.

49.     Van Wagner signs have been subjected to numerous enforcement actions by City inspectors. Van Wagner itself and its property lessors have received Orders to Comply from the City's Department of Building and Safety asserting that a sign is in violation of the Ordinance's ban, demanding that the sign be removed, and prohibiting the installation of any future sign at the cited location.

50.     In addition, City authorities filed criminal charges against a property owner with whom Van Wagner had a lease to maintain a sign. As a result of that enforcement action, Van Wagner was forced to take down its sign on that landowner's property.

## VAN WAGNER IS ENTITLED TO INJUNCTIVE RELIEF

51.     The harm caused by the Ordinance cannot be remedied at law. The Ordinance prohibits the expression of speech that is protected under the First Amendment and the California Constitution, and such harm, by definition, cannot be remedied at law.

9

52.     Van Wagner is also suffering irreparable injury to its business, including reputational harm and the loss of customer goodwill.  Van Wagner offers its customers the highest-quality advertising signs.  The Ordinance is preventing Van Wagner from offering its customers the state-of-the-art advertising signs that they have come to expect from Van Wagner.  Van Wagner is also losing business opportunities every day that it is not able to offer new advertising space to customers.  These injuries are particularly acute in light of the Court's order enjoining the City from enforcing provisions of the Ordinance against another local sign company.  These injuries are also exacerbated by the Settlement Agreements, which give competitor sign companies the right to modernize their sign inventory, while the City refuses to give Van Wagner comparable benefits.  An award of money damages cannot remedy these lost business opportunities, harm to reputation, and loss of customer goodwill.

53.     Van Wagner will be able to begin to install new signs and to convert existing ones into digital displays promptly after the unlawful provisions of the Ordinance are enjoined.

## COUNT ONE

**(Facial Challenge to Ordinance's Ban on Off-Site, Supergraphic, and Freeway Signs as Unlawful Prior Restraints; Ordinance §§ 14.4.4(B)(9); 14.4.4(B)(11); 14.4.5; 14.4.6; 91.6201.6)**

54.     Plaintiff realleges and incorporates herein by reference all previous paragraphs of this Complaint.

55.     The City's Ordinance vests local officials with unfettered discretion to authorize new off-site, supergraphic, and freeway signs, and to allow existing billboards to be converted into digital displays, based on their subjective judgment whether to adopt a specific plan, supplemental use district, or development agreement.

10

56.    In addition, the Ordinance vests City officials with unbridled discretion to grant a "significant modification" to the Ordinance's restrictions, which could allow the erection of a new sign or the modernization of an existing one.

57.    The Ordinance endows local authorities with sweeping authority to determine whether a sign is a "hazard."

58.    By conferring on City officials such standardless discretion, the Ordinance, the official law and policy of the City, has deprived and continues to deprive Van Wagner of its rights under the First and Fourteenth Amendments to the United States Constitution.

59.    Van Wagner is entitled to a declaration that Ordinance sections 14.4.4(B)(9), 14.4.4(B)(11), 14.4.5, 14.4.6, and 91.6201.6 are inconsistent with the First Amendment and are invalid on their face.  Van Wagner is further entitled to an injunction prohibiting the City from enforcing those provisions against it.

## COUNT TWO

**(As-Applied Challenge under First Amendment to Ordinance's Regulation of Commercial Speech; Ordinance §§ 14.4.4(B)(9); 14.4.4(B)(11); 14.4.6)**

60.    Plaintiff realleges and incorporates herein by reference all previous paragraphs of this Complaint.

61.    The Ordinance, the official law and policy of the City, purports to ban new off-site, supergraphic, and freeway signs and to prevent outdoor advertisers from modernizing existing signs.

62.    But at the same time, the City has allowed and continues to allow thousands of off-site signs within the City's borders.  These include, but are not necessarily limited to:

a)    Thousands of off-site signs authorized by the City's Street Furniture Agreement;

11

b)      Off-site signs allowed to be maintained under the Settlement Agreements;

c)      Upon information and belief, signs within 2,000 feet of freeways, including, but not necessarily limited to: (i) an electronic pole sign at the Staples Center, adjacent to the 110 Harbor Freeway; and (ii) four billboards in the 15th Street Signage Supplemental Use District;

d)      Upon information and belief, signs near the City's convention center and sports arena;

e)      Signs on light poles authorized under the City's street banner program; and

f)      Advertising signs displayed on City transit buses.

63.    Notwithstanding the Ordinance's ban on altering off-site signs, the City has also allowed and continues to allow certain sign companies to convert their existing billboards into digital displays.

64.    By allowing all of these new and newly-modernized signs, the City works at cross-purposes with its purported interests in promoting traffic safety and regulating aesthetics. The City's prohibition against new signs and modernizing existing ones therefore does not directly advance those interests and reaches further than necessary to serve the City's interests.

65.    The signs Van Wagner has erected and seeks to erect and/or modernize display lawful, non-misleading messages and pose no greater risk to the City's purported objectives of promoting traffic safety and aesthetics than do the thousands of off-site signs authorized by the City.

66.    The City's application of its ban on new off-site, supergraphic, and freeway signs, and its prohibition against altering existing signs, to Van Wagner violates Van Wagner's rights under the First and Fourteenth Amendments to the United States Constitution.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

67.     Van Wagner is entitled to a declaration that Ordinance sections 14.4.4(B)(9), 14.4.4(B)(11), and 14.4.6. are inconsistent with the First Amendment and are invalid as applied to Van Wagner.  Van Wagner is entitled to an injunction prohibiting the City from enforcing those provisions against it.

## COUNT THREE

### (Facial Challenge under First Amendment to Ordinance's Content-Based Preference for Certain Non-Commercial Speech; Ordinance § 91.6201.2)

68.     Plaintiff realleges and incorporates herein by reference all previous paragraphs of this Complaint.

69.     The Ordinance requires sign companies like Van Wagner to obtain a permit before erecting a new sign or modernizing an existing one.  LAMC § 91.6201.2.  This permit requirement applies to signs carrying both commercial and non-commercial speech.

70.     But the Ordinance specifically exempts from this permit requirement certain signs based on their content.  The Ordinance says:  "The following signs are exempt from the requirements to obtain a permit before erection: . . . Boards and signs used exclusively to display official notices issued by any court or public officer in the performance of a public duty or by a private person in giving legal notice."  *Id.* § 91.6201.2(1)(b).

71.     By excepting speech from the burden of obtaining a permit based on its content, the Ordinance burdens speech based on its content.

72.     The City has no compelling interest in selectively burdening signs based on their content, and its chosen means is not narrowly drawn to achieve any valid municipal objective.

73.     By restricting speech based on its content, the Ordinance, the official law and policy of the City, has deprived and continues to deprive Van Wagner of its rights under the First and Fourteenth Amendments to the United States Constitution.

13

74.     Van Wagner is entitled to a declaration that Ordinance section 91.6201.2 is inconsistent with the First Amendment and therefore invalid on its face. Van Wagner is further entitled to an injunction prohibiting the City from enforcing its permit requirement against it.

## COUNT FOUR

**(Equal Protection Challenge to Ordinance's Preference for Certain Speech and Speakers; Ordinance § 91.6201.2)**

75.     Plaintiff realleges and incorporates herein by reference all previous paragraphs of this Complaint.

76.     The Ordinance requires sign companies like Van Wagner to obtain a permit before erecting a new sign or modernizing an existing one. LAMC § 91.6201.2. This permit requirement applies to signs carrying both commercial and non-commercial speech.

77.     But the Ordinance specifically exempts from this permit requirement certain signs displayed by certain speakers based on the content of the sign. The Ordinance says: "The following signs are exempt from the requirements to obtain a permit before erection: . . . Boards and signs used exclusively to display official notices issued by any court or public officer in the performance of a public duty or by a private person giving legal notice." *Id.* § 91.6201.2(b).

78.     By excepting certain speech and speakers from the permit requirement based on the speech's content, the Ordinance discriminates against outdoor advertisers based on the content of their speech.

79.     The City's discriminatory permit requirement does not serve a compelling interest, is not narrowly tailored to any interest, and is not the least restrictive alternative for achieving any valid City interest.

80.     Van Wagner is entitled to a declaration that Ordinance section 91.6201.2 violates the Equal Protection Clause of the U.S. Constitution and

14

1   is invalid on its face.  Van Wagner is further entitled to an injunction prohibiting
2   the City from enforcing section 91.6201.2's permit requirement against it.

3                                    **COUNT FIVE**

4   **(Equal Protection Challenge to City's Preferential Treatment of Companies**
                                   **That Sued the City)**
5

6          81.    Plaintiff realleges and incorporates herein by reference all previous
7   paragraphs of this Complaint.

8          82.    The City, through its Settlement Agreements, which are the official
9   law and policy of the City, has granted certain benefits to outdoor advertisers that
10  exercised their First Amendment right to petition by suing the City.  Those benefits
11  include, but are not necessarily limited to, the ability to maintain certain
12  unpermitted or otherwise out-of-compliance off-site signs and to convert existing
13  billboards from static messages into digital displays.

14         83.    The City, through its official policy, has denied those same benefits to
15  Van Wagner, which had not exercised its right to petition the government for
16  redress of grievances by suing the City.

17         84.    The City's disparate treatment of Van Wagner compared to its
18  treatment of the settling sign companies violates the Equal Protection Clause of the
19  U.S. Constitution.  The City has distributed benefits based on the exercise of a
20  fundamental right—the right to petition the government for redress of grievances.

21         85.    The City's disparate treatment of Van Wagner does not serve a
22  compelling interest, is not narrowly tailored to any interest, and is not the least
23  restrictive alternative for achieving any valid City interest.

24         86.    Van Wagner is entitled to a declaration that the City has violated its
25  rights to equal protection under the Fourteenth Amendment to the United States
26  Constitution.  Van Wagner is entitled to an injunction granting it benefits
27  comparable to those enjoyed by the companies who exercised their First
28  Amendment rights.

                                        15

1

### COUNT SIX

2
**(Challenge under California Constitution; Ordinance §§ 14.4.4(B)(9) & (11); 14.4.5; 14.4.6; 91.6201.2; 91.6201.6)**

3

4      87.    Plaintiff realleges and incorporates herein by reference all previous

5    paragraphs of this Complaint.

6      88.    The Ordinance violates Van Wagner's free speech rights under

7    Article 1, § 2 of the California Constitution by granting unfettered discretion to

8    local officials over whether to allow new off-site, supergraphic, or freeway signs

9    and whether to allow outdoor advertisers to modernize existing signs; by invalidly

10   restricting commercial speech; and by drawing content-based distinctions between

11   non-commercial speech.

12     89.    Van Wagner is entitled to a declaration that the City is violating its

13   rights under the California Constitution and an injunction barring the City from

14   enforcing its invalid requirements against it.

15                          ### PRAYER FOR RELIEF

16     Wherefore, Van Wagner prays for the following relief:

17     A.    A declaration that the Ordinance's prohibitions on off-site signs

18   (§ 14.4.4(B)(11)), supergraphic signs (§ 14.4.4(B)(9)), and freeway signs (§ 14.4.6)

19   are invalid under the First Amendment on their face;

20     B.    A declaration that the Ordinance's prohibitions on off-site,

21   supergraphic, and freeways signs are invalid under the First Amendment as applied

22   to Van Wagner;

23     C.    A declaration that the Ordinance's prohibition against modernizing

24   existing signs is invalid under the First Amendment on its face and as applied to

25   Van Wagner;

26     D.    A declaration that the Ordinance's permitting scheme is unlawful on

27   its face under the First Amendment and the Equal Protection Clause to the United

28   States Constitution;

16

1      E.    A declaration that the Ordinance violates the California Constitution;

2      F.    A preliminary and permanent injunction barring the City from

3 enforcing the Ordinance's invalid requirements against Van Wagner;

4      G.    Costs and reasonable attorneys' fees as permitted by law; and

5      H.    Such other and further relief as the Court may find necessary and

6 appropriate.

7

8 DATED: September 4, 2008        MUNGER, TOLLES & OLSON LLP

9

10                          By: _____

11                                  LUIS LI

12                        Attorneys for Plaintiff
VAN WAGNER COMMUNICATIONS,

13                        LLC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge Dale S. Fischer and the assigned discovery Magistrate Judge is Jennifer T. Lum.

The case number on all documents filed with the Court should read as follows:

## CV08- 5782 DSF (JTLx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

======================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X] Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | **[ ] Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | **[ ] Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

VAN WAGNER COMMUNICATIONS, LLC,

PLAINTIFF(S)

v.

CITY OF LOS ANGELES,

DEFENDANT(S).

CASE NUMBER

CV08-05782 DSF JTLx

**SUMMONS**

TO:     DEFENDANT(S): CITY OF LOS ANGELES

A lawsuit has been filed against you.

Within  20   days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, Luis Li _____, whose address is  355 South Grand Avenue, 35th Floor, Los Angeles, CA 90071-1560 _____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

**SEP - 4 2008**

Dated: _____

By: _____

LA'REE HORN

Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

1192

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
Van Wagner Communications, LLC

**DEFENDANTS**
City of Los Angeles

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Luis Li, Munger, Tolles & Olson LLP
355 South Grand Avenue, 35th Floor, Los Angeles, CA 90071-1560
Telephone: 213-683-9100 [See attachment "A"]

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☐ Yes  ☑ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☑ No        ☐ **MONEY DEMANDED IN COMPLAINT: $** _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
An action pursuant to 42 U.S.C. Section 1983, for Defendant's violation of Plaintiff's constitutional rights under the First and Fourteenth Amendments.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | IMMIGRATION | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus- Alien Detainee | | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | ☑ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | FEDERAL TAX SUITS |
| | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:**   Case Number: **CV08-05782**

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

---

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No  ☑ Yes
If yes, list case number(s): <u>Please see accompanying Notice of Related Cases</u>

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)  ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
         ☑ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
         ☑ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
         ☐ D.  Involve the same patent, trademark or copyright, <u>and</u> one of the factors identified above in a, b or c also is present.

---

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | New York |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles |  |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles |  |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date  September 4, 2008

  **Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

---

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

# ATTACHMENT A

## Attorneys for Plaintiff Van Wagner Communications, LLC

Paul J. Watford
Munger, Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071-1560
Telephone: 213-683-9100

Aimee Feinberg
Munger, Tolles & Olson LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-2907
Telephone: 415-512-4000

Jenny M. Jiang
Munger, Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071-1560
Telephone: 213-683-9100